UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| AMERICAN GENERAL LIFE<br>INSURANCE COMPANY | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 16-851-JWD-RLB |
| NICHOLAS RUSSELL, ET AL | |

### RULING ON MOTION IN LIMINE AND TO EXCLUDE TESTIMONY OF BRUCE BACON

This matter comes before the Court on the motion of codefendants in interpleader Nicholas Russell and Michelle DiBenedetto ("Children") to exclude the testimony of Bruce Bacon, rebuttal expert retained by codefendant in interpleader Beryl Franklin ("Franklin"). (Doc. 89.)[1] The motion is opposed. (Doc. 90.) For the reasons which follow, the motion is denied.

### I.  BACKGROUND

This matter arises out of a dispute over annuity benefits due under a deferred annuity contract (contract VA 297190) issued by plaintiff American General Life Insurance Company ("Plaintiff" of "AGLIC") to Robert W. Russell ("R. Russell") on October 21, 2010. (Doc. 1, at 2-3.) The dispute centers on the efficacy of a power of attorney (POA) which arguably authorized the change of beneficiaries from the Children to Franklin. On March 27, 2016, R. Russell died. (Doc. 1 at 4.)

Because of the disagreement over the proper beneficiaries to whom the annuity proceeds are owed, AGLIC filed the current Complaint for Interpleader Relief naming as defendants the Children and Franklin. (Doc. 1.) The Children contend that the effort to change the beneficiary

---

[1] Although the original motion (Doc. 86) inadvertently moved to exclude the testimony of Jill Hayes, the Children filed a motion to correct this error and substitute the name of Dr. Bruce Bacon. (Doc. 87.) The Court granted the motion. (Doc. 88), and the Amended Motion was filed. (Doc. 89.) The original memorandum in support of the motion (Doc. 86-1), did not contain the error and is the operative memorandum.

1

"was part of a complex plan to divest the Children of their entire inheritance…" (Doc. 78 at 1.) Furthermore, they urge that the POA which authorized and directed AGLIC to change the beneficiary to Franklin was executed by R. Russell at a time when he was "dying in hospice from end-stage liver disease and inflicted with advanced stage hepatic encephalopathy" (Doc. 77 at 1), rendering him incompetent and legally incapable of executing the POA. Therefore, they argue the POA and the purported change of beneficiary is ineffective. Franklin disputes these allegations and specifically maintains that R. Russell was competent to give the POA and, at the time he did, "was awake, speaking with his attorney, and consciously made the choice to sign the Power of Attorney." (Doc. 76-5 at 1.)

## II. SUMMARY OF PARTIES' ARGUMENTS

In a previous ruling, the Court denied a Daubert challenge to the Children's expert Dr. Perry Hookman ("Hookman") but permitted Franklin to hire an expert to rebut Hookman. Dr. Bruce Bacon ("Bacon") was chosen by Franklin to provide the rebuttal testimony. (Doc. 86-5.) The Children do not question Bacon's credentials and, indeed, it appears that he is a highly qualified gastroenterologist on the faculty of St. Louis University School of Medicine. (Doc. 90 at 2-3.) Rather, the Children file the present motion seeking to exclude Bacon from testifying on the following grounds:

1. Bacon "failed to either state his complete opinions or give reasons and data to support his opinions." (Doc 86-1 at 3.);

2. "Bacon's conclusion about Robert Russell's mental capacity is irrelevant because it is duplicative of Mr. Owens and Dr. Hayes' testimonies and should not be allowed." (*Id*. at 9.)

3. Bacon's "proposed testimony will not help the trier of fact because his testimony is needlessly cumulative and a waste of time." (*Id*. at 4)

4. Bacon "limited his testimony to what Marvin Owen, a nonphysician, saw" and therefore, the Children "are faced with trial by ambush". (*Id*. at 5.)

5. Bacon's opinion regarding the credibility of witness Marvin Owen is improper and inadmissible. (*Id*. at 10.)

6. Bacon "failed to review Russell's medical records prior to March 8, 2016, even though he had access to them within a reasonable time to be included in his report." (*Id*. at 4.) Although "Bacon was provided with Robert Russell's medical records dating back to January 2016, list of medications that Mr. Russell was under on March 12, 2016, and all of the depositions from the witnesses who are testifying to Mr. Russell's mental state…", Bacon "failed to include all of the information and records that were provided by counsel when he gave his opinions." (*Id*. at 6.)

7. Bacon "failed to consider the psychotropic medications administered to Russell and did not consider the diagnosis of Russell's treating physicians…" (*Id*.)

Franklin responds to these arguments as follows:

1. Bacon's failure to list the medical records was an oversight because of the way the documents were packaged." (Doc. 90 at 3 (citing Bacon Dep., Doc 86-3 at 91:16-25).) "The reason the medical records were not listed separately is because one version of Dr. Hookman's expert report, the version provided to Dr. Bacon by undersigned counsel, contained 333 pages of medical records embedded at the end of the report." (*Id*.) Franklin states that "on April 15, 2019, [the Children] were provided exact copies of all documents Dr. Bacon considered in writing his report, including the version of Dr. Hookman's report that contained the embedded medical records." (*Id*. at 4.)

2. Bacon's opinion is not duplicative nor is it irrelevant since it does precisely what it was intended to do: "directly contradict[] Dr. Hookman's claim that the decedent was incompetent insofar as his conclusion suggests it is possible to render such a determination based on the medical records. Notably, Dr. Bacon did not conclude that Robert Russell had capacity as alleged by movants. He merely stated that the best evidence would have to be eyewitnesses because the medical records are insufficient." (*Id*. at 5.)

3. Bacon's testimony is not cumulative or a waste of time because his opinion is "from his perspective as an expert on liver disease." (*Id*.)

4. While not addressing the Children's fourth argument directly, Franklin points to medical records and other items considered by Bacon other than the testimony of Marvin Owen. (*Id*. at 3-5.)

5. Franklin fails to address the Children's fifth argument: that Bacon is impermissibly giving opinion testimony regarding the credibility of a witness, Marvin Owen.

3

6. Similar to his argument on items 1 and 3 above, Franklin points to Bacon's report and embedded attachments and deposition testimony to assure the Court that Bacon reviewed Russell's medical records and the reports of the other physicians. (*Id*. at 3-5.)

7. Bacon did not testify regarding medications because he was limited to rebutting the testimony of Dr. Hookman and "Dr. Hookman did not address how any medications might have affected the Decedent's executive function in his report either. As a rebuttal expert, Dr. Bacon can only refute items contained within Dr. Hookman's report. Thus, neither expert should be allowed to testify about the Decedent's medications. (*Id*. at 4.)

### III. STANDARD

Pursuant to Rule 702, "a witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise" if its preconditions are met. FED. R. EVID. 702. Rule 702, however, does not render all expert testimony admissible. *United States v Scavo*, 593 F.2d 837, 844 (8th Cir. 1979). Rather, beyond being subject to the Rule's helpfulness requirement, expert testimony can still be excluded per Rule 403. FED. R. EVID. 403; *United States v Green*, 548 F.2d 1261, 1270 (6th Cir. 1977). Entirely discretionary, Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The Children's motion is a *Daubert* challenge based on Bacon's alleged failure to use an accepted methodology and his opinion's alleged lack of an adequate factual foundation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). When *Daubert* is invoked, a district court may, but is not required, to hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) (citing *United States v. John*, 597 F.3d 263, 274–75 (5th Cir. 2010)). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. (citations omitted). "At a minimum, a district

court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriquez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. . . . *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." . . . The Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

The cases following *Daubert* have expanded the factors and explained the listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

This Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, . . . which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. . . . Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1, 2010 U.S. Dist. LEXIS 108845, at *2-3 (M.D. La. Oct. 12, 2010) (internal citation omitted) (citing to *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138-39 (holding that appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (holding "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony"); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*, No. 02-2565, 2003 WL 22427981, 2003 U.S. Dist. LEXIS 19052 (E.D. La. Oct. 24, 2003) (Vance, J.):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. . . . As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." . . . The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

*Id.* at *3 (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L. Ed. 2d 37 (1987), and *United States v. 14.38 Acres of Land, More or Less*

*Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987))).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in, e.g.*, *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

IV. **APPLICATION**

The Children first argue that Bacon "failed to either state his complete opinions or give reasons and data to support his opinions." (Doc 86-1 at 3.) The Court has carefully reviewed Bacon's expert report (Doc. 86-5) and while it may be a short report, it is "complete" in that it provides what he reviewed and relied upon in reaching his conclusions, it states his opinions in rebuttal to Dr. Hookman and explains the basis for those opinions. Furthermore, it gives the "data" upon which he used to reach his opinions. (Doc. 86-5 at 1.) Finally, the Children took a lengthy deposition of Bacon (over four hours) in which his opinions and the bases for them were explored and challenged. (Doc. 86-3.) When the report is combined with the deposition, it is clear that sufficient information has been provided regarding Bacon's opinions, data relied upon and reasons supporting it.[2] This portion of the Children's motion is denied.

---

[2] Numerous cases have declined to exclude an expert where matters outside an expert report were discussed at a deposition, where an opportunity to re-depose the expert was offered, and/or where a continuance was allowed. *See, e.g., Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203–04 (8th Cir. 2015) (affirming district court's finding that the untimely disclosure of a supplemental report (concerning a field study conducted on the morning of the expert's deposition) was "substantially justified and . . . harmless" because "[t]he record indicate[d] [plaintiff] fully deposed [the expert] with respect to the field study and never requested the opportunity to take a supplemental deposition" and because [plaintiff] "fail[ed] to identify any information in the report that took her by surprise or that she needed to discuss with [the expert] in more detail" (citations omitted)); *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 888–89 (8th Cir. 2006) (finding no abuse of the trial court's discretion because: "While [the expert] did not include his reliance on x-rays in his pretrial disclosure, he did discuss these x-rays during his deposition. Therefore, [plaintiff] was on notice that [the expert] might rely on these x-rays during his trial testimony. A harmless violation

Next, the Children maintain that "Bacon's conclusion about Robert Russell's mental capacity is irrelevant because it is duplicative of Mr. Owens and Dr. Hayes' testimonies and should not be allowed." (Doc. 86-1 at 9.) The Children confuse and conflate two very different

---

of Rule 26 does not mandate exclusion of the evidence." (citation omitted)); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 2014 WL 1664263 at *4 (E.D. Ky. Apr. 25, 2014) ("the preliminary nature of [the expert's] report does not require its exclusion and any risk of 'unfair surprise' or 'ambush at trial' has been mooted by the later deposition."); *Franklin v. United States*, 2014 WL 11497835 at *12–13 (D.N.M. Feb. 18, 2014) (collecting cases on the issue and holding that opinion elicited from expert during deposition that was not reflected in his expert report was "harmless" and did not create "unfair surprise"); *Bracey v. Jolley*, 2012 WL 12870257 at *4 (N.D. Ga. Aug. 3, 2012) (the deficiency in the expert report was harmless because, during the deposition, the "Defendants were able to elicit the sources upon which [the expert] relied"); *E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 822 (M.D. Tenn. 2009) ( "In the present case, both of the deficiencies alleged by Defendant represent, at worst, instances of harmless error. Dr. Cohen's deposition remedied any failures to disclose within the Report. . . . [I]n the present case, Defendant's [sic] submitted their Motion to Strike Expert Report and Testimony after Dr. Cohen's deposition, arguing that Defendant suffered prejudice in its inability to prepare for cross-examination at trial. Accordingly, the Rule 26(a)(2) purpose of reducing the need or length of expert depositions is moot in this case. The relevant purpose of Rule 26(a)(2) is thus notice to Defendant pending trial, and under these circumstances, the Court finds that deposition disclosure may be curative." (citations omitted)); *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 397 (S.D.N.Y. 2005) (allowing expert doctor to testify despite "deficient" report and failure to comply with Rule 26 because, among other reasons, (1) the expert's "testimony [wa]s essential to plaintiff's case"; (2) because "plaintiffs annexed a declaration by [the expert] to their opposition papers further detailing her conclusions with respect to the care provided to each plaintiff and her bases for those conclusions; and (3) "plaintiffs [were] willing to make [the expert] available for deposition by defendants prior to trial if necessary."); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 192 F.R.D. 511, 514 (D. Md. 2000) (changes of opinion made by the expert to his report during a subsequent deposition were not excluded as they were "both technically timely [under Fed. R. Civ. P. 26(e)], and sufficiently in advance of trial that [they] cannot fairly be characterized as ambush tactics" (citation omitted)); *cf. Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) ("Technically, all expert disclosures required by Rule 26(a)(2)(B) must be made in the expert's written report. . . . In practice, however, a party is considered to have met its obligations for expert disclosure so long as all required information is divulged in either the written report *or a subsequent deposition of the expert*," (emphasis added) (citations omitted), but striking plaintiffs' purported rebuttal supplemental report when they "filed [the supplement] two years after all expert discovery had closed and thus more than two years after they had received defendants' expert reports and had deposed those experts," when the supplement was filed less than one month before trial, and when there was no time to reopen discovery); *United States v. Roberts*, 830 F. Supp. 2d 372, 386-87 (M.D. Tenn. 2011) (finding that an expert was competent to testify under Fed. R. Evid. 702—despite the fact that his report was "troubling" to the Court for failing to provide the basis and reasons for his opinions—and stating: "While Rule 26(a) seeks to prevent 'ambush at trial' and to 'shorten or decrease the need for expert deposition, those concerns can become moot when a deposition is actually taken. Moreover, because one purpose of Rule 26(a)(2) is to provide notice, a 'deposition disclosure may be curative,' and a *Daubert* hearing can serve to elucidate the basis for an expert opinion." (citations omitted)). *Gillum v. United States*, 309 F. App'x 267 (10th Cir. 2009) is perhaps the most persuasive case on this issue. There, the Tenth Circuit reversed the district court's exclusion of plaintiff's expert and granting of summary judgment because (1) "[b]eyond the inadequate report, the [defendant] had [the doctor's] deposition and [plaintiff's] response to the motion in limine, which discussed the reasons and bases for [the doctor's] opinion," and (2) because the plaintiff "had arranged for [the doctor] to be available for a second deposition." *Id.* As a result, "any prejudice accruing to the [defendant] from an inadequate opportunity to prepare for the first deposition was capable of being cured." *Id.* The Tenth Circuit powerfully reasoned: "The parties to a litigation are not merely players in a game, trying to catch each other out. Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits." *Id.*

concepts, relevance and cumulation. The opinions are clearly relevant in that they attack the opinion of the Children's expert on the critical question, R. Russell's mental capacity to give a POA to change beneficiaries on the annuity policy. Although supportive of Owen's testimony, it is clearly not cumulative. Owen will testify as a lay witness as to what he observed of R. Russell at the time he signed the POA. Bacon gives expert testimony providing scientific and medical reasons why he believes Owen's testimony is credible. Finally, while Bacon's opinions support Hayes' conclusions, they are not cumulative of them in that they are based on his expertise as a gastroenterologist, whereas Hayes is a neuropsychologist. Moreover, this Court specifically permitted Franklin to add an expert to rebut Hookman, also a gastroenterologist. This part of the Children's motion is denied.

The Children's next argument largely mirrors the previous one, i.e. Bacons "proposed testimony will not help the trier of fact because his testimony is needlessly cumulative and a waste of time." (*Id*.) For the same reasons, the Court rejects this argument.

The Children next posit that Bacon "limited his testimony to what Marvin Owen, a nonphysician, saw" and therefore, the Children "are faced with trial by ambush". (*Id*. at 5.) The first part of this argument is similar to those made by counsel for the Children in previous briefs, goes beyond mere exaggeration and is plainly wrong as is clearly demonstrated in Bacon's report (86-5) and 142-page, four-hour deposition (Doc. 86-3). The argument that he is somehow "faced with trial by ambush" is equally mystifying given his receipt of Bacon's report and counsel's lengthy deposition of Bacon.

Next, the Children argue that Bacon's opinion regarding the credibility of witnesses is improper and inadmissible. (Doc. 86-1 at 10.) In his report Bacon concludes, "The medical records from March 12, 2016 are insufficient to confirm or refute Mr. Owen's testimony.

9

Accordingly, it is my opinion that *if* Mr. Owens is telling the truth then more likely than not, Mr. Russell was competent on March 12, 2016, when he signed the Power of Attorney document. However, it is impossible to render an opinion as to Mr. Russell's competence or incompetence on March 12, 2016, based solely on the records in the hospice facility." (Doc. 86-5 at 2-3 (emphasis added).)

The Children are right that experts are not permitted to give opinions regarding whether a given witness is telling the truth. Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, the Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snape-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

"The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*, 698 F.2d at 240. In *Owen*, the Fifth Circuit explained:

> The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well is a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.

*Id*.

But, here, it is clear that counsel for the Children again overstates his position. Bacon does not express an opinion regarding Owen's credibility. He merely states that the medical records from the hospice facility cannot definitely answer the question of Russell's competence

10

nor can they rule out, as Hookman suggests, the truthfulness of Owen's testimony. "*[I]f* Mr. Owens is telling the truth[,] then Mr. Russell was competent on March 12, 2016, when he signed the Power of Attorney document." (Doc. 86-5 at 2-3, emphasis added.) This part of the Children's motion is denied.

The Children next argue that Bacon "failed to review Russell's medical records prior to March 8, 2016, even though he had access to them within a reasonable time to be included in his report." (*Id*. at 4.) Although "Bacon was provided with Robert Russell's medical records dating back to January 2016, list of medications that Mr. Russell was under on March 12, 2016, and all of the depositions from the witnesses who are testifying to Mr. Russell's mental state…" Bacon "failed to include all of the information and records that were provided by counsel when he gave his opinions." (*Id*. at 6.)

In response, Franklin points to Bacon's report and 399 pages of embedded medical records and Bacon's deposition testimony to assure the Court that Bacon reviewed the medical records and the reports of the other physicians. (Doc. 90 at 3-5.)

On this issue, it is clear to the Court that Bacon reviewed Russell's medical records. (*See, e.g.*, Doc. 86-5 at 1; Doc. 86-3 at 95.) But, even if he didn't, or didn't review them thoroughly, these are not matters that affect the admissibility of his testimony but the weight to be given to it. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land More Or Less Situated in Lefore County, Miss.*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Property Cas. Co. of America*, 2009 WL 2356292 at *3 (E.D. La. July 28, 2009). Furthermore, "[m]atters left for the jury's consideration

11

include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292 at *3 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F. Supp.2d 908, 935 (W.D. Wis. 2007)). Here, the Children's attack goes to the weight, not admissibility, of Bacon's testimony. This portion of the Children's motion is denied.

Finally, the Children complain that Bacon "failed to consider the psychotropic medications administered to Russell and did not consider the diagnosis of Russell's treating physicians…" (Doc. 86-1 at 6.) Franklin responds that Bacon did not testify regarding medications because he was limited to rebutting the testimony of Dr. Hookman and "Dr. Hookman did not address how any medications might have affected the Decedent's executive function in his report either. As a rebuttal expert, Dr. Bacon can only refute items contained within Dr. Hookman's report. Thus, neither expert should be allowed to testify about the Decedent's medications. (Doc. 90 at 4.)

The Court agrees that, for reasons given in this Court's earlier ruling regarding Hookman's rebuttal report, a rebuttal report does not allow its proponent an opportunity for a re-do of earlier reports of the proponent's primary experts and should be limited to rebutting the testimony of the opposing expert and not more. Furthermore, what Bacon considered and did not consider is, for the reasons previously stated, a matter for cross examination and not a reason for exclusion. This final part of the Children's motion is denied.

V.    **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** the Children's motion to exclude the testimony of Dr. Bruce Bacon (Doc. 89.) is **DENIED**.

Signed in Baton Rouge, Louisiana, on September 16, 2019.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**